**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **VICTORIA SCIARRINO,** | : | **No. 3:18cv1615** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **REGIONAL HOSPITAL OF** | : | |
| **SCRANTON and SCRANTON** | : | |
| **HOSPITAL COMPANY, LLC,** | : | |
| **Defendants** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## <u>MEMORANDUM</u>

Before the court for disposition is Defendant Scranton Quincy Hospital Company, LLC d/b/a Regional Hospital of Scranton's[1] motion for summary judgment in this employment discrimination case based upon the Americans with Disabilities Act. The parties have briefed their respective positions, and the matter is ripe for disposition.

## Background

Defendant, formerly known as Mercy Hospital, employed plaintiff from August 28, 1989 through March 28, 2018. Initially plaintiff served as a Radiologic X-Ray Technician. (Doc. 29, Def.'s Statement of Undisputed Material Facts

---

[1] The complaint evidently incorrectly names defendant as "Regional Hospital of Scranton and Scranton Hospital Company, LLC." (Doc. 28, Mot. for Summ. Judg.).

(hereinafter "SOF") ¶ 2).[2]  In 2001, plaintiff transferred to the position of Mammography Technologist.  (SOF ¶ 3).  Scranton Quincy Hospital Company, LLC bought Mercy Hospital in the spring of 2011, and plaintiff continued her employment as a Mammograph Technologist. (SOF ¶¶ 4-5).  During her employment plaintiff was a member of the SEIU Healthcare Pennsylvania, CTW, CLC labor union. (SOF ¶ 14).

In December 2015, plaintiff suffered a concussion in a non-work related accident when she fell from a chair. (SOF ¶ 7, 8).  Plaintiff returned to work until February 3, 2016.  (SOF ¶ 8).   Plaintiff, however, did not remain at work.  She obtained a continuous leave under the Family and Medical Leave Act (hereinafter "FMLA") beginning on February 3, 2016. (SOF ¶ 10).  This leave was extended to June 7, 2016.  (SOF ¶ 11).   Under the Collective Bargaining Agreement (hereinafter "CBA"), plaintiff asked for a non-FMLA medical leave of absence until August 1, 2016.  (SOF ¶ 17).  Subsequently, she requested that the leave be extended to January 2017.  (SOF ¶ 18).   Pursuant to the terms of the CBA, the defendant granted the leave.  (SOF ¶ 19).

On February 1, 2017, plaintiff's physician, a concussion specialist, provided a fitness for duty form indicating that plaintiff could return to work if she could

---

[2] For the facts of this case we will cite to the defendant's statement of undisputed material facts.  We will cite to the facts with which the plaintiff has agreed.   If there is a disagreement from the plaintiff regarding the facts we will so note.

gradually progress from working four (4) hours a day to returning full-time. (SOF ¶¶ 22, 26). At this point, the doctor diagnosed plaintiff with "post-concussion syndrome". (SOF ¶ 26). The doctor also provided a note indicating that plaintiff should work "unitask" as opposed to multitasking. (SOF ¶ 24).

Joe Cassidy, the hospital's Administrative Director of Imaging Services, who was plaintiff's supervisor, indicated that plaintiff's position was not a "unitask" job. (SOF ¶¶ 29, 31). Plaintiff strongly disagrees and indicates that the job is, or can be, unitask. (Doc. 37, Pl.'s Resp. to SOF ¶ 32).

Plaintiff indicates that after learning of her limitations, defendant told her to stay out of work another month and follow up with the hospital regarding her employment in March 2017. (Pl. Res. to SOF ¶ 47). Defendant states plaintiff was not "told" to stay out of work, but it was only a suggestion. (SOF ¶ 47). Thus, plaintiff did not return to work at that time. She visited her doctor in March 2017 and he wrote her a note indicating that she would remain out of work until she was re-evaluated on April 20, 2017. (SOF ¶ 50).

After plaintiff had been off work for more than the one-year period provided for under the CBA, Kevin Witman, the hospital's manager for labor and employee relations, placed her on "per diem" status as of March 21, 2017. (SOF ¶¶ 28, 53-54). Evidently, defendant never called plaintiff back to work on the per diem basis, and her employment was terminated. The instant lawsuit followed.

The complaint raises the following claims: Count 1 – discrimination based upon disability in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*(hereinafter "ADA"); Count 2 - failure to reasonably accommodate in violation of the ADA; and Count 3 – unlawful termination in violation of the ADA. (Doc. 1, Compl.). Plaintiff seeks the following: a declaration that defendant violated the ADA; compensatory damages, including mental anguish emotional distress, and humiliation; monetary damages for past and future wage loss; punitive damages; and reasonable attorneys' fees. (Id.)

After the parties engaged in discovery, the defendant filed a motion for summary judgment on all of the counts in the complaint. The parties have briefed their respective positions, bringing the case to its present posture.

**Jurisdiction**

As plaintiff brings suit pursuant to a federal statute, the ADA, 42 U.S.C. § 12101 *et seq.*, we have federal question jurisdiction. See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

**Legal Standard**

Granting summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to judgment as a matter of law." See Knabe v. Boury, 114

F.3d 407, 410 n.4 (3d Cir. 1997) (quoting FED. R. CIV. P. 56(c)). "[T]his standard

provides that the mere existence of some alleged factual dispute between the

parties will not defeat an otherwise properly supported motion for summary

judgment; the requirement is that there be no genuine issue of material fact."

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in

original).

In considering a motion for summary judgment, the court must examine

the facts in the light most favorable to the party opposing the motion. Int'l Raw

Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990). The

burden is on the moving party to demonstrate that the evidence is such that a

reasonable jury could not return a verdict for the non-moving party. Anderson,

477 U.S. at 248. A fact is material when it might affect the outcome of the suit

under the governing law. Id. Where the non-moving party will bear the burden of

proof at trial, the party moving for summary judgment may meet its burden by

showing that the evidentiary materials of record, if reduced to admissible

evidence, would be insufficient to carry the non-movant's burden of proof at trial.

Celotex v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies its

burden, the burden shifts to the non-moving party, who must go beyond its

pleadings, and designate specific facts by the use of affidavits, depositions,

5

admissions, or answers to interrogatories showing that there is a genuine issue for trial.  Id. at 324.

**Discussion**

As noted above, plaintiff brings suit pursuant to the ADA.  The ADA provides that an employer cannot discriminate against a qualified individual with a disability because of her disability in regard to her employment.  42 U.S.C. § 12112(a).  A plaintiff may assert an ADA disability claim with either direct or circumstantial evidence.  Here, plaintiff evidently relies upon circumstantial evidence.

Where the plaintiff relies upon circumstantial evidence to support an ADA disability discrimination claim, the Third Circuit Court of Appeals has approved the use of the employment discrimination burden-shifting framework.  Shiring v. Runyon, 90 F.3d 827, 831 (3d Cir. 1996).  Under this framework, a plaintiff seeking recovery pursuant to the ADA must first establish a *prima facie* case of discrimination by demonstrating that: (1) she is disabled within the meaning of the ADA; (2) she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) she has suffered an otherwise adverse employment decision as a result of discrimination.  Id.

Once the plaintiff has established a *prima facie* case, the burden of production shifts to the employer to "proffer a legitimate, non-discriminatory reason for the adverse employment decision." Abramson v. William Patterson Coll., 260 F.3d 265, 281-82 (3d Cir. 2001).  An employer need only introduce "evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994).  "The employer need not prove that the tendered reason **actually** motivated its behavior, as throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff." Id. (emphasis in original).

Should the employer meet its burden, the burden of production shifts back to the plaintiff to establish that a jury "could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating factor or determinative cause of the employer's action." Id. at 764.  If the plaintiff does, then granting summary judgment is inappropriate.

Defendant's motion for summary judgment raises the following four issues: 1) Plaintiff's ADA claim fails as a matter of law as she cannot establish a *prima facie* case; 2) Plaintiff's failure to accommodate claim fails as she was provided

an accommodation; 3) Plaintiff has no evidence of pretext; and 4) Plaintiff is not entitled to lost wages.  We will address these issues in turn.

## I.  ADA *prima facie* case

As noted above, the first step in demonstrating an ADA violation is to establish a *prima facie* case.  Defendant argues that plaintiff is incapable of establishing a *prima facie* case of an ADA violation.  The defendant concedes two portions of the prima facie case, that plaintiff was disabled and that she was terminated from her position.  (Doc. 32, Def.'s Br. at 6).  Defendant argues, however, that plaintiff cannot prove that she was "otherwise qualified" to perform the essential functions of her employment despite her disability.  After a careful review, we disagree.

The law provides that a "qualified individual" is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).  Plaintiff bears the burden of establishing that she is a qualified individual.  See Cleveland v. Policy Management Sys. Corp., 526 U.S. 795, 806 (1999).  "In order to establish that a plaintiff is 'qualified' under the ADA, the employee must show that he/she satisfies the requisite skill, experience, education and other job-related requirements of the employment position that

such individual holds or desires." Conneen v. MBNA America Bank, N.A., 334 F.3d 318, 326 (3d Cir. 2003).

Defendant claims that plaintiff has not established that she is qualified. Her physical limitations required that she not multitask, but was rather limited to unitasking. Defendant argues that her job as a Mammography Technologist required multitasking. Plaintiff's manager considers multitasking a necessary part of the Mammography Technologist position. (SOF ¶ 31). Plaintiff disagrees. At her deposition, plaintiff testified that she was able to perform the Mammography Technologist job in a unitask manner. Plaintiff is well-versed in the requirements of her job as she had been doing it for approximately fifteen (15) years before she needed to take leave. This experience has provided her the knowledge to opine on whether the job requires multitasking.

At her deposition, plaintiff provided her analysis as to whether the Mammography Technologist position is a multitask or unitask job. She stated: "It is a series of unitask events that make up the whole procedure. . . . It's a step-by-step process . . . . I could have done the job myself, if they would have took me, in a unitasking manner." (Doc. 29-4, Pl. Dep. at 172-73). Although, the deposition may not be precisely clear on the issue, we find that it is sufficient to establish that plaintiff was qualified for the position.

To establish that plaintiff's position was not "unitask", defendant presents an email from the plaintiff's direct supervisor, Administrative Director of Imaging, Joe Cassidy, to Kevin Witman, the Manager for Labor and Employee Relations. In the email Cassidy states "the position of Rad-Mammography technologist is not a unitask job. In mammography you are [to] perform an exam that is multifaceted and several factors are performed simultaneously." (Doc. 29-18, Def. Ex. R, Email from Cassidy to Witman dated Feb. 7, 2017).

At her deposition, plaintiff addressed the content of this email as follows:

> Q. Do you agree with Mr. Cassidy?
> A. (Plaintiff) No.
> Q. And he uses examples of what he believes are things that need to be performed simultaneously, number 1, positioning the patient, setting the controls for exposure and manipulating the computer.
> A. You cannot do that simultaneously.
> Q. Okay. So do you believe that's an unreasonable example from Mr. Cassidy?
> A. Yes.
> Q. He uses a second example, during some examinations, needle localizations, you have to perform multiple tasks    You believe that to be accurate?
> A. No.
> Q. Do you believe that's an unreasonable example on Mr. Cassidy's part?
> A. There's multiple steps, but again, they're unitasked.

(Doc. 29-4, Pl. Dep. at 179-80).

Defendant's brief is rather detailed with the specific tasks that plaintiff had to do for her job and how they are not all "unitask". In so doing, it appears that the defendant uses a strict construction of the term "unitask" and ignores that

plaintiff's doctor limited her to "primarily unitask" work not "solely" unitask work. Without going into great detail ourselves, it is sufficient to note that plaintiff remains steadfast in her assertion that she could in fact perform the tasks of her job. (Doc. 29-4, Pl.'s Dep. at 169). Additionally, the fact that plaintiff was engaging with the defendant in an effort to return to work supports her assertion that she believed that she could do the job. Defendant has at best created an issue of fact as to whether plaintiff could perform her job or not.

Defendant has evidence that plaintiff was not qualified for the job as it requires multitasking, which she could not perform, and plaintiff has evidence that she was qualified because the job could be done primarily unitask. There appears to be a genuine issue of material fact as to whether plaintiff was qualified to do the job, and the defendant's motion summary judgment based on this ground, therefore, will be denied.

## II. Failure to accommodate claim

The first and second counts of plaintiff's complaint allege the defendant failed to appropriately accommodate her disability. (Doc. 1, Compl. ¶¶ 27-28, 33-39). Plaintiff alleges that the defendant "failed to provide or attempt to provide a reasonable accommodation for Plaintiff's disability, despite her numerous requests and petitions." (Id. ¶ 36). Defendant argues that it did provide an appropriate accommodation to the plaintiff and judgment should be granted in its

favor on this claim.  After a careful review, we agree with the plaintiff that summary judgment on this claim is inappropriate.

Under the ADA, an employer discriminates against a qualified individual with a disability when the employer does not "make[e] reasonable accommodations to the known physical or mental limitations of the individual unless the [employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of the [employer]."  Williams v. Phila. Hous. Auth. Police Dept., 380 F.3d 751, 761 (3d Cir. 2004) (internal quotation marks and citations omitted).

To determine the appropriate reasonable accommodation, the ADA requires that an employer and employee engage in an "interactive process." Specifically, "[o]nce a qualified individual with a disability has requested provision of a reasonable accommodation, the employer must make a reasonable effort to determine the appropriate accommodation.   The appropriate reasonable accommodation is best determined through a flexible, interactive process that involves both the employer and the [employee] with a disability."  29 C.F.R. pt. 1630, app. § 1630.9.   Both parties bear responsibility in this process.  Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 312 (3d Cir. 1999).

Defendant argues that it accommodated the plaintiff in the instant case by allowing her additional leave - that is more time to recuperate - after she

exhausted her FMLA leave.  Granting the leave is all that is required under the ADA according to the defendant.  Plaintiff argues that the defendant did not engage in an interactive process before granting this "accommodation" but rather told plaintiff to take more time off from work and eventually terminated her.  As such, plaintiff's position is that defendant violated the ADA.

To establish that defendant did not properly participate in the interactive process, plaintiff must demonstrate that 1) defendant knew about her disability; 2) plaintiff requested accommodations or assistance for her disability; 3) defendant did not make a good faith effort to assist plaintiff in seeking accommodations; and 4) plaintiff could have been reasonably accommodated had it not been for defendant's lack of good faith.  Coneen v. MBNA Am. Bank, N.A., 334 F.3d 313, 330-31 (3d Cir. 2003).

Instantly, plaintiff has established the first element as it cannot be denied that defendant knew about plaintiff's disability.  The second element has also been met.  Plaintiff sought accommodation or assistance for her disability as evidenced by the doctor's "Certification of Fitness for Duty" form that she presented to her employer.  The note provides that the doctor completing the form, plaintiff's treating physician, is familiar with the duties and responsibilities of plaintiff's job and that he believed the plaintiff was able to perform those duties. (Doc. 29-12, Certification of Fitness for Duty).  The doctor recommended

restrictions, however. The restrictions were that plaintiff return to work for four hours a day for the first two weeks, six hours a day for the next two weeks and then return to eight hours a day. (Id.) Several days later, the doctor issued a note indicating that plaintiff should "primarily unitask." (Doc. 29-13, Doctor's note dated Feb. 6, 2017). Based upon these notes, plaintiff indicates that the appropriate accommodation would be for her to return to work on a limited hourly schedule as the doctor recommended.

Rather than engaging in an interactive process, plaintiff claims that defendant ordered her not to come back to work with the prospect that they would revisit the issue of her return in the future. Then, instead of continuing with any type of interaction, defendant placed plaintiff on a *per diem* basis, never called her back to work, and sought to fill her position with someone else.

Defendant, on the other hand, focuses on the accommodation which was provided, without analyzing whether it engaged in a good faith interactive process with the plaintiff to assist in accommodating her disability. In effect, defendant argues that because they allowed plaintiff more time off, she cannot now claim that they failed to accommodate under the ADA. We disagree. As set forth above, the parties must in good faith engage in an interactive process to determine if plaintiff could perform her job with or without accommodation. If plaintiff's evidence is believed, the defendant did not do so. They merely

informed plaintiff that she was to be placed on more leave. At her deposition, plaintiff indicates that the defendant "told me to stay out another month and to follow up in March." (Doc. 29-4, Pl.'s Dep. at 168). Plaintiff evidently interpreted that as not an interactive process but an edict from the employer. Based upon these facts, a jury could find that the defendant failed to engage in the interactive process and thus find for plaintiff on the failure to accommodate claim. Summary judgment on this ground will be denied.

## III. Evidence of pretext

As set forth above, once plaintiff establishes a *prima facie* case, the burden of production shifts to the defendant to establish legitimate non-discriminatory reasons for its employment decision. Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994). "The employer need not prove that the tendered reason **actually** motivated its behavior, as throughout this burden-shifting paradigm the ultimate burden of proven intentional discrimination always rests with the plaintiff." Id. (emphasis in original).

Should the employer meet its burden, the burden of production shifts back to the plaintiff to establish that the reason proffered by the defendant is merely a pretext for discrimination. In other words, plaintiff must provide a basis for the jury to "either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a

motivating factor or determinative cause of the employer's action." Id. at 764.

"This is ordinarily done by demonstrating such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." Krouse v. American Sterilizer Co., 126 F.3d 494, 504 (3d Cir. 1997) (internal quotation marks and citations omitted).

Defendant argues that it provided a legitimate non-discriminatory reason for plaintiff's termination and plaintiff has not provided any evidence of pretext. We disagree.

Defendant's position is that the hospital needed certainty regarding the plaintiff's position, the second Mammography Technician position. (SOF ¶ 52). Thus, when plaintiff presented another note from her doctor indicating that she was unable to return to work until she was re-evaluated on April 20, 2017, they placed her on a per diem basis and eventually terminated her. (Id.)

Defendant takes too narrow a view of the issue. The invidious discrimination allegedly began when defendant would not take plaintiff back on a "primarily unitask" basis. Plaintiff has cast doubt on that decision. Indicating that she could in fact perform the job with her limitations and also indicating that at the time, the defendant's position was that she could not use new computer programs that had been instituted at the hospital. Then, when she went to the

doctor after defendant refused to allow her back to work, plaintiff alleges that the doctor increased her leave on the basis of defendant's discriminatory actions. That is, the doctor believed she could not perform her job because the defendant did not allow her to return to work. Thus, the doctor opined she needed more time off. The employer then used the doctor's recommendation to put plaintiff on a per diem basis as it needed "certainty" regarding the position. The defendant, however, never did replace the plaintiff. Sufficient inconsistencies, changing rationales, and implausibilities are present in the defendant's reasons for its actions that a reasonable factfinder could find the reasons merely pretext for discrimination. The defendant's motion for summary judgment on this basis will be denied.

## IV. Lost wages

Plaintiff's complaint seeks as damages, *inter alia*, "monetary damages for lost past and future wages[.]" (Doc. 1, Prayer for Relief ¶ c)). Defendant argues, for a variety of reasons, that these damages should be limited. We will first describe the factual background to the damages issue and then discuss the issues defendant has raised.

As is apparent from the discussion above, plaintiff was absent for over a year from her employment due to her disability. Plaintiff applied for and received short-term disability payments through Sun Life Financial from February 17, 2016

through May 3, 2016.  (Doc. 29, SOF ¶¶ 65-66).  She applied for long-term disability benefits in May of 2016, and they were approved in July 2016.  (Id. ¶¶ 67-68).   Plaintiff was eligible to receive monthly benefits through May 2, 2018, however, she accepted a lump sum settlement of her long-term benefit claim on May 17, 2017.  (Id. ¶ 70).  Plaintiff moved to Florida in June 2017.  (SOF ¶ 64).  Plaintiff received an offer of employment as a Radiologic Technologist in Florida in September 2018.  (SOF ¶ 72).  She declined the offer.  (SOF ¶ 73).

Based upon these facts, defendant raises several issues with regard to the amount of damages to which plaintiff may be entitled.  Defendant argues that plaintiff has already received long-term disability benefits through the end of 2017, therefore, she is not entitled to lost wages for that period of time.  Defendant also argues plaintiff left the relevant job market in June 2017 because she moved to Florida, thus she is not entitled to any damages from that point on.  But even if plaintiff is entitled to lost wages, they should end in September 2018 at which time she declined the offer of employment in a substantially similar position.  We will address these issues separately.

## A.  Long-term disability benefits and lost wages

Defendant first argues that plaintiff is not entitled to lost wages for the period during which she received long-term disability benefits.  Defendant cites to no authority for this position, and we find defendant's position unconvincing.

The law provides that back pay is not necessarily reduced by the amount of disability payments due to the collateral source rule. "Under the collateral source rule a plaintiff who has been paid his salary or a pension during disability, or had his medical expenses paid by another, or out of the proceeds of an accident insurance policy, may still recover full damages for these items from a defendant who is liable for the injury. To this extent, plaintiff may get double payment on account of the same items. The defendant wrongdoer should not, it is said, get the benefit of payments that come to the plaintiff from a collateral source." Feeley v. United States, 337 F.2d 924, 926-27 (3d Cir. 1964) (internal quotation marks omitted); see also Craig v. Y&Y Snacks, Inc., 721 F.2d 77, 82 (3d Cir. 1983) (holding that unemployment benefits are not deducted in a Title VII employment discrimination case); Maxfield v. Sinclair Int'l, 766 F.2d 788, 793-94 (3d Cir. 1985) (holding that social security benefits should not be deducted in an age discrimination case). The Third Circuit reasons that "[u]nder the collateral source rule payments under Social Security, welfare programs, unemployment compensation and similar programs have all been treated as collateral benefits which would not ordinarily be set off against damages awarded. . . .[T]he objectives of ending employment discrimination and compensating victims in a make whole fashion would be furthered by a rule precluding deduction of the benefits." Maxfield, 766 F.2d at 793-94.

Accordingly, we will deny summary judgment on the issue of reducing plaintiff's back pay by the amount of disability insurance benefits she received.

## B. Leaving the relevant job market

As explained above, plaintiff moved from Northeastern Pennsylvania to Florida in June 2017.   Defendant argues that she thus left the relevant job market and is not entitled to any damages for lost wages from that point forward. We are unconvinced.

Plaintiff testified at her deposition that had she still been working with defendant she would have remained in Pennsylvania and not moved to Florida, or moved to Florida only after securing employment there.  (Doc. 29-4, Pl. Dep. 134-35).  Defendant has circumstantial evidence which they argue indicates that plaintiff would have moved to Florida even if she were still working with defendant.   A material question of fact therefore exists, and summary judgment on this issue is inappropriate.

## C.  Substantially similar position

The last argument raised by the defendant is that lost wages must end by September 2018 as at that point plaintiff turned down a substantially similar position in Florida.  We reject this argument.

Plaintiff has the duty to mitigate her damages.  See Ford Motor Co. v. EEOC, 458 U.S. 219, 213-32 (1982).  Defendant argues that plaintiff did not

mitigate her damages in this case, and it is the defendant's burden to establish this assertion.  <u>Anastasio v. Schering Corp.</u>, 838 F.2d 701, 707 (3d Cir. 1988). Defendant may establish a failure to mitigate damages, by demonstrating that "substantially equivalent positions were available" and plaintiff "failed to use reasonable diligence in attempting to secure such a position."  <u>Id.</u> at 708.  Here, defendant has presented evidence that defendant was actually offered a job that defendant argues was substantially similar.  (Doc. 37, SOF ¶ 72).  Plaintiff, however, did not accept the position.  Plaintiff has offered evidence that the job she was offered was not substantially similar to the job she had with defendant. The offered job was more burdensome in that plaintiff would have had to travel to various locations dozens of miles apart as opposed to working in only one location.  (Doc. 29-4, Pl. Dep. 91-92).  Accordingly, a question of fact exists as to whether plaintiff mitigated her damages and summary judgment on this issue is inappropriate.

**Conclusion**

For the reasons set forth above, we find the existence of genuine issues of material fact preclude the entry of summary judgment.  Accordingly, the defendant's motion for summary judgment will be denied.  An appropriate order follows.

**Date: March 16, 2020**

**BY THE COURT:**

**s/ James M. Munley**
**JUDGE JAMES M. MUNLEY**
**United States District Court**